UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

GREGORY A. WALTER,           )
                             )
     Plaintiff,              )     Action No. 5:16-cv-459-JMH
                             )
v.                           )
                             )     **MEMORANDUM OPINION**
                             )         **AND ORDER**
GUITAR CENTER STORES, INC.   )
and KIRK HAMILTON,           )
                             )
     Defendants.            )

                              * * * *

## I. INTRODUCTION

    This matter is before the Court upon Defendant Guitar Center
Stores, Inc. and Kirk Hamilton's Partial Motion to Dismiss
Plaintiff's Complaint [DE 6], as well as Plaintiff Gregory A.
Walter's Motion to Amend Complaint [DE 9].  The Motions are fully
briefed and ripe for the Court's review [DE 7, 8, 10, 11].  For
the reasons stated herein, Defendants' Motion is hereby **GRANTED**
and Plaintiff's Motion is hereby **GRANTED IN PART and DENIED IN
PART**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

    Walter worked as a Store Manager at Guitar Center's Lexington,
Kentucky location from October 2009 to March 2016.  [DE 1-1, p. 5,
¶ 7-9].  During this time, he suffered from a medical condition
that caused serious pain in his knees and feet.  [*Id.* at p. 5-6,

1

¶ 11]. As a result, he took a leave of absence under the Family Medical Leave Act ("FMLA") from September 1, 2015 to November 15, 2015, and again from January 1, 2016 to February 23, 2016. [*Id.* at p. 7, ¶ 20]. On February 17, 2016, he submitted a Reasonable Accommodation Request to Guitar Center's Human Resources Administrator Nancy Ponce. [*Id.* at p. 6, ¶ 13].

Six days later, Walter returned to work. [*Id.*]. Walter alleges that his supervisor, Eric Garrett, made disparaging comments about his disability. [*Id.* at p. 7, ¶ 16-17]. He indicates that his "superior," Kirk Hamilton, made similar statements about his condition. [*Id.*]. When Walter complained to Dennis Haffeman, Guitar Center's Vice President of Human Resources, Haffeman told him to "look in the mirror." [*Id.* at p. 7, ¶ 18].

When Walter returned to work, Guitar Center had a vacancy for a Sales and Training Manager. [*Id.* at p. 6, ¶ 14]. Because the position was unfilled, Walter was required to stand without breaks for the entire workday. [*Id.*]. He requested that Guitar Center hire an appropriate individual to resolve this problem. [*Id.*]. On February 25, 2016, Walter notified Garrett and Hamilton that his tasks were exacerbating his condition. [*Id.* at p. 8, ¶ 23]. Hamilton made more disparaging comments about Walter's condition

and suggested that Walter resign if he could not walk the store. [*Id.*].

That same day, Walter contacted Ponce to notify her that he still had not received approval for his Reasonable Accommodation Request. [*Id.* at p. 6, ¶ 13]. He submitted physician's notes to support his Request and informed her that he needed to discuss "unfavorable conditions here in the store" with her. [*Id.* at p. 7, ¶ 22]. She explained that Human Resources Field Representative Kenric Knecht would be handling the Request. [*Id.*]. However, Knecht never contacted Walter. [*Id.*].

On February 26, 2016, Walter again e-mailed Ponce about his situation and explained that he was not receiving accommodation for his condition. [*Id.* at p. 8, ¶ 24]. Walter's supervisor, Garrett, was terminated and replaced by Ryan Flannery that same day. [*Id.* at p. 8, ¶ 25]. On February 29, 2016, Walter received a letter from Ponce indicating that the following accommodation had been approved, effective that same day: "when patient has a flare up, patient should be allowed to sit down and rest his feet at least fifteen to thirty minutes every two hours." [*Id.* at p. 6-7, ¶ 15]. However, the accommodation was not implemented. [*Id.* at p. 8, ¶ 26].

On March 4, 2016, Walter tendered his resignation to Flannery and informed him that he was resigning due to the lack of

3

accommodation. [*Id.* at p. 8, ¶ 28]. Flannery claimed to be unaware that Walter was entitled to any accommodations. [*Id.*]. Although Walter planned to work two weeks after submitting his resignation, he was unable to come to work due to a flare up on March 7, 2016. [*Id.* at p. 9, ¶ 29]. When he informed Flannery that he could not work that day, Flannery responded that Walter did not need to finish up the two-week period because Guitar Center had already hired a replacement. [*Id.* at p. 9, ¶ 30]. Guitar Center then sent Walter a release from liability and informed him that he would not receive his final paycheck if he refused to sign it. [*Id.* at p. 9, ¶ 32]. Walter notified the Kentucky Department of Labor about the issue, prompting Guitar Center to send him his final paycheck. [*Id.* at p. 9, ¶ 33].

On November 21, 2016, Walter filed suit against Guitar Center and Hamilton in Fayette County Circuit Court, asserting the following claims: (1) discrimination in violation of the Kentucky Civil Rights Act ("KCRA"); (2) retaliation in violation of the KCRA; (3) outrageous conduct; and (4) negligent hiring and retention against Guitar Center only. [DE 1-1]. Guitar Center and Hamilton removed the case to federal court on December 16, 2016 on the basis of diversity jurisdiction. [DE 1]. They then filed the instant Motion to Dismiss. [DE 6]. Once that Motion was fully briefed, Walter submitted a Motion to Amend, in which he

4

seeks to add further detail to his retaliation claim and assert additional claims for disability discrimination under the Americans with Disabilities Act ("ADA"), constructive discharge under Kentucky law, and retaliation under the FMLA.

### III. ANALYSIS

**A.  *Guitar Center and Hamilton's Motion to Dismiss***

#### 1. Standard of Review

A Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement should include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

#### 2.  Counts I, III, and IV

Defendants move to dismiss Count I against Hamilton and Count III against Hamilton and Guitar Center. They also seek dismissal of Count IV against Guitar Center. Walter makes no attempt to

salvage these claims in his Response.  The Court has reviewed the Complaint, as well as relevant case law, and finds that partial dismissal is appropriate for the reasons stated by Defendants. Because Walter does not provide any opposing arguments, the Court will be brief in its analysis of these claims.

### a.    Claim against Hamilton for Discrimination in Violation of the KCRA

The KCRA "provide[s] for execution within the state of the policies embodied in the [federal civil rights statutes]." Ky. Rev. Stat. Ann. § 344.020(1)(a).  Accordingly, "Kentucky courts have always construed violations under the KCRA consistent with federal construction of similar violations under the federal civil rights laws." *Ky. Dep't of Corr. v. McCullough*, 123 S.W.3d 130, 138 (Ky. 2003).

Under the KCRA, it is unlawful for an employer:

> [t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking.

Ky. Rev. Stat. Ann. § 344.040(1)(a); *compare* 42 U.S.C. § 2000e-2(a).

The United States Court of Appeals for the Sixth Circuit has held that an employee or supervisor who does not otherwise qualify as an "employer," as that term is defined in Title VII, cannot be subject to individual liability for Title VII violations. *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 404 (6th Cir. 1997); *see also* 42 U.S.C. § 2000e(b) (defining an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees … and any agent of such person"). The Sixth Circuit further stated that its ruling was "equally applicable to KRS Chapter 344" because its provisions mirror those set forth in Title VII. *Id.* at 405.

As Defendants are quick to point out, there are no allegations in the Complaint to suggest that Hamilton qualifies as an "employer" under Title VII and, by extension, the KCRA. Walter simply refers to Hamilton as his "superior" throughout the Complaint. [DE 1-1, p. 7-8, ¶ 17-23]. As the above-cited case law indicates, Hamilton cannot be considered an "employer" simply because he has supervisory authority over Walter.[1] Thus, Hamilton cannot be held individually liable for disability discrimination

---

[1]As Defendants are quick to point out, Walter refers to other individuals as "supervisors," but repeatedly characterizes Hamilton as a "superior." Thus, it is not clear that Hamilton even had supervisory authority over Walter. Assuming *arguendo* that Hamilton did qualify as Walter's supervisor, Walter's claim nevertheless fails for the reasons stated above.

in violation of the KCRA.  Dismissal of Count I against Hamilton is appropriate.

### b.    Claim of Outrage against Hamilton and Guitar Center

The tort of outrage, also known as intentional infliction of emotional distress ("IIED"), consists of the following elements: (1) the wrongdoer's conduct is intentional or reckless; (2) the wrongdoer's conduct is "outrageous and intolerable in that it offends against generally accepted standards of decency or morality"; (3) there is a causal connection between the wrongdoer's conduct and the emotional distress; and (4) the emotional distress is severe. *Wiseman v. Whayne Supply Co.*, 359 F. Supp. 2d 579, 592 (W.D. Ky. 2004) (citing *Gilbert v. Barkes*, 987 S.W.2d 772, 777 (Ky. 1999)).  The tort of outrage does not provide redress for "petty insults, unkind words and minor indignities" or even behavior that is "cold, callous, and lacking sensitivity." *Kroger v. Willgruber*, 920 S.W.2d 61 (Ky. 1996); *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1 (Ky. 1990).

"[W]hen a plaintiff prosecutes a statutory discrimination claim under KRS Chapter 344 and a common law claim of IIED/outrageous conduct, the former preempts the latter." *Wiseman*, 359 F. Supp. 2d at 592 (citing *Kroger Co. v. Buckley*, 113 S.W.3d 644 (Ky. Ct. App. 2003)).  "The reasoning for this preemption is that Chapter 344 extends protection to personal

dignity and freedom from humiliation of individuals, interpreted as allowing claims for damages for humiliation and personal indignity." *Id*. (citing *McNeal v. Armour and Co.*, 660 S.W.2d 957, 958 (Ky. Ct. App. 1983)).

In this case, Walter asserts a claim for disability discrimination in violation of the KCRA against Hamilton and Guitar Center. [DE 1-1, p. 9-10, ¶ 34-44]. He also pleads a claim for outrageous conduct against both Defendants. [*Id.* at p. 11-12, ¶ 49-56]. For the reasons explained above, Walter's outrage claim against Guitar Center is automatically subsumed by his KCRA discrimination claim against that entity. This is not the case for Walter's outrage claim against Hamilton because the Court has already dismissed the disability discrimination claim against him that would have subsumed the outrage claim. Nevertheless, dismissal of the outrage claim against Hamilton is appropriate because Walter has failed to allege that his behavior was so outrageous as to offend generally accepted standards of decency. *Brewer v. Hilliard*, 15 S.W.3d 1, 6 (Ky. Ct. App. 1999). Hamilton's negative comments about Walter's disability may rise to the level of petty insults or callous behavior, but they are not so egregious as to lead a member of the public to exclaim "Outrageous!" *Id.*

### c.  Negligent Hiring and Retention

"[T]he established law in this Commonwealth recognizes that an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person." *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998).  To prevail on such a claim, a plaintiff must demonstrate the following elements: "(1) the employer knew or reasonably should have known that the employee was unfit for the job for which he was employed, and (2) the employee's placement or retention at that job created an unreasonable risk of harm to the plaintiff." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733 (Ky. 2009) (citing *Oakley*, 964 S.W.2d at 442).

Although no Kentucky state court has reached this issue, federal courts sitting in Kentucky have indicated that an employee cannot seek redress for the misdeeds of a fellow employee by suing his or her employer for negligent hiring and retention.  *See Henn v. Pinnacle Publ'g, Inc.*, Civ. A. No. 12-307-KSF, 2012 WL 6096670, at *3 (E.D. Ky. Dec. 7, 2012); *Grubbs v. Thermo Fisher Sci.*, Civ. A. No. 13-183-DLB-CJS, 2014 WL 1653761, at *2 (E.D. Ky. 2014); *Montell v. Diversified Clinical Servs., Inc.*, 969 F. Supp. 2d 798, 816 (E.D. Ky. 2013), reversed in part on other grounds by *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497 (6th Cir. 2014);

10

*Gatlin v. Shoe Show, Inc.*, Civ. A. No. 3:14-cv-446-TBR, 2014 WL 3586498, at *5 (W.D. Ky. July 21, 2014).

This case law indicates that Walter, a former employee of Guitar Center, cannot maintain an action against it for the negligent hiring and retention of Hamilton and other employees who allegedly made disparaging comments about his disability.[2] However, even if Walter could bring such an action against Guitar Center, his Complaint does not include any facts to suggest that Guitar Center knew or reasonably should have known that Hamilton and other employees were unfit for the job for which they were employed.  Dismissal of Count IV is therefore warranted.

### 3.    Count II—Conspiracy to Retaliate

Defendants seek dismissal of Walter's claim against Guitar Center and Hamilton for conspiracy to retaliate in violation of the KCRA.  Specifically, Defendants argue that Walter has failed to state a conspiracy claim because Guitar Center and Hamilton are part of the same entity and cannot conspire with one another. Walter counters that this argument is based on a misinterpretation of KRS § 344.280.

_____

[2] The Court reminds Walter's attorney that he asserted a negligent hiring and retention claim against a plaintiff's fellow employer for the misdeeds of an employee in a prior proceeding. *See TJX*, Civ. A. No. 5:11-cv-319-JMH, 2012 WL 1565235, at *3 (E.D. Ky. May 2, 2012).  The Court dismissed that claim for the same reasons that dismissal is appropriate here.  *Id.*

"[A] conspiracy is a corrupt or unlawful combination or agreement between two or more persons to do by concerted action an unlawful act, or to do a lawful act by unlawful means." *McDonald v. Goodman*, 239 S.W.2d 97, 100 (Ky. 1951). Under Kentucky law, "civil conspiracy is not a free-standing claim; rather, it merely provides a theory under which a plaintiff may recover from multiple defendants for an underlying tort." *Stonestreet Farm, LLC v. Buckram Oak Holdings, N.V.*, No. 2008-CA-002389-MR, 2010 WL 2696278, at *13 (Ky. Ct. App. July 9, 2010).

"The intracorporate conspiracy doctrine holds that 'a corporation cannot conspire with its employees, and its employees, when acting within the scope of their employment, cannot conspire among themselves.'" *Cowing v. Commare*, 499 S.W.3d 291, 294 (Ky. Ct. App. 2016) (quoting *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007)). The Kentucky Court of Appeals has held that the intracorporate conspiracy doctrine applies to conspiracy to retaliate claims brought under KRS § 344.280. *Id.*; *see also McGee v. Cont'l Mills, Inc.*, No. 5:09-cv-155-R, 2009 WL 4825010, at *2 (W.D. Ky. Dec. 11, 2009); *Dunn v. Gordon Food Servs., Inc.*, 3:10-cv-335-R, 2010 WL 4180503, at *2 (W.D. Ky. Oct. 20, 2010).

KRS § 344.280 provides in pertinent part:

It shall be an unlawful practice for a person, or for two (2) or more persons to conspire:

(1) To retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this chapter, or because he has made a charge, filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under this chapter.

Walter argues that the intra-corporate conspiracy doctrine is not fatal to his claim because a conspiracy to retaliate under KRS § 344.280 does not require two or more individuals. In support of this proposition, Walter points out that the statute prohibits "a person" from engaging in retaliatory practices. However, the above-cited case law clearly states that a conspiracy to retaliate requires two or more individuals who are not members of the same collective entity. The intra-corporate conspiracy therefore bars Walter's conspiracy to retaliate claim against Guitar Center and Hamilton. Dismissal of that claim is appropriate.

The Court notes that KRS § 344.280 also allows liability to attach to a person who directly retaliates against an individual who has opposed practices declared unlawful by the KCRA. However, Count II states only a claim for conspiracy to retaliate. There is no additional claim for direct retaliation. In his Motion for Leave to Amend, Walter essentially seeks permission to add factual allegations that would state a claim for direct retaliation against each Defendant under KRS § 344.280. Defendants oppose the proposed

13

amendments on the ground that they are futile.  The Court will address these arguments in the next section.

**B.  *Walter's Motion to Amend the Complaint***

As explained above, Walter filed a Motion to Amend the Complaint after Defendants' Motion to Dismiss became ripe.  In his Motion, Walter asks the Court for leave to add further factual detail to Count II and to assert additional claims for disability discrimination in violation of the Americans with Disabilities Act ("ADA"), constructive discharge under Kentucky law, and retaliation in violation of the FMLA.  Defendants urge the Court to deny Walter's Motion as futile because his proposed amendments still fail to state claims upon which relief may be granted.

**1.    Standard of Review**

When faced with a motion to amend pleadings, the district court should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Unless there is an "apparent or declared reason" that relief is inappropriate, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," the court should grant leave to amend.  *Id.*  "Amendment of a complaint is futile when the

14

proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 (6th Cir. 2005).

## 2.   Count II

"A prima facie case of retaliation requires a plaintiff to demonstrate '(1) that plaintiff engaged in an activity protected by [the KCRA];[3] (2) that the exercise of his civil rights was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.'" *Brooks*, 132 S.W.3d at 803 (quoting *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 877 (6th Cir. 1991).

With respect to the third element, the employment action must be "materially adverse." *Smith v. Walle Corp.*, 62 F. Supp. 3d 587, 596 (E.D. Ky. 2014). "A materially adverse change may be demonstrated 'by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material

---

[3] The quoted text actually refers to Title VII. *Christopher*, 936 F.2d at 877. However, "Kentucky courts have always construed violations under the KCRA consistent with federal construction of similar violations under the federal civil rights laws." *McCullough*, 123 S.W.3d at 138. For this reason, the *Brooks* court stated that a prima facie case of retaliation under the KCRA consists of the same elements as a Title VII claim for retaliation. *Brooks*, 132 S.W.3d at 803.

responsibilities, or other indices that might be unique to a particular situation.'" *Id.* (quoting *Ford v. Gen. Motors Co.*, 305 F.3d 545, 553 (6th Cir. 2002)).

Defendants argue that the retaliation claim against Guitar Center must be dismissed because Walter does not allege that he suffered an adverse employment action.[4] Instead, he simply states that he tendered his resignation and that Guitar Center accepted it without requiring him to work the last two weeks. In seeking to amend his Complaint, Walter clarifies that he suffered adverse employment action in the form of constructive discharge.

Constructive discharge "is a means of proving an element of a … claim" under the KCRA. *Sullivan v. Paycor, Inc.*, Civ. A. No. 3:13-CV-00028-H, 2013 WL 2286069, at *3 (W.D. Ky. May 23, 2013). "[W]hile constructive discharge may constitute an adverse employment action within the meaning of the KCRA, not all adverse employment actions constitute constructive discharge." *Brooks*, 132 S.W.3d at 807. "The commonly accepted standard for constructive discharge is whether, based upon objective criteria, the conditions created by the employer's action are so intolerable that a reasonable person would feel compelled to resign." *Id.*

---

[4] Defendants do not attack the other three elements of Walter's prima facie case.

16

In his Proposed Amended Complaint, Walter states that he repeatedly requested an accommodation from Guitar Center and did not receive it. [DE 9-1, p. 3-4, ¶ 11-16]. He further indicates that Guitar Center's failure to accommodate his disability eventually prompted him to resign his employment.[5] [*Id.* at p. 2, ¶ 3]. These allegations that Guitar Center constructively discharged Walter by repeatedly failing to accommodate his disability, combined with its failure to address the negative comments of his co-workers and supervisors, are sufficient to state a claim for retaliation based on a constructive discharge theory under the KCRA. Thus, Walter's proposed amendments to his Complaint

---

[5] Walter also predicates his retaliation via constructive discharge claim on Guitar Center's alleged withholding of his final paycheck. [DE 9-1, p. 2, ¶ 8]. Specifically, Walter asserts that, after he submitted his resignation and ceased working, Guitar Center refused to pay him his final wages unless he signed a release from liability. [*Id.*]. This allegation does not qualify as an adverse employment action because Walter was no longer employed by Guitar Center at that time. *See Allstate Ins. Co. v. Zeefe*, Civ. A. No. 5:15-159-KKC, 2016 WL 1071011, at *4, n. 3 (E.D. Ky. Mar. 17, 2016). However, even if Guitar Center's actions could be construed as adverse employment action, Walter would not be able to establish a causal connection between that action and the exercise of his rights. After all, he explicitly states that Guitar Center withheld his final paycheck in order to coerce him into signing a release, not as a retaliatory measure for requesting an accommodation. [*Id.*].

The Court acknowledges that Walter's claim is thin. After all, the Sixth Circuit has stated that "the denial of an accommodation, by itself, is not sufficient to prove that an employer constructively discharged an employee." *Gleed v. AT&T Mobility Servs., LLC*, 613 F. App'x 535, 539 (6th Cir. 2015). Although Walter indicates that Guitar Center actually approved his Reasonable Accommodation Request, it was never implemented. Nevertheless, the Court finds that these allegations, combined with Guitar Center's failure to address the negativity that other employees and supervisors expressed towards Walter, are sufficient to state a claim, for the reasons stated more fully in the body of his Memorandum Opinion and Order.

are not futile.  His Motion for Leave to Amend is granted as to his proposed claim against Guitar Center for direct retaliation in violation of the KCRA.

Defendants also insist that Walter's retaliation claim against Hamilton fails because Walter does not allege that Hamilton retaliated against him for requesting an accommodation by making derogatory comments about his disability.[6]  Rather, Walter alleges that Hamilton made derogatory comments to him because he was disabled.    Defendants conclude that Walter's claim against Hamilton is essentially one for disability discrimination, which he cannot pursue under the KCRA for the reasons stated *supra*. Defendants also point to a lack of allegations that Hamilton knew about Walter's request for an accommodation.

Walter seeks to correct these flaws in his Proposed Amended Complaint, but Defendants insist that his efforts are nevertheless futile because he cannot establish that Hamilton's derogatory comments amount to actionable harassment.  A prima facie case of retaliatory harassment consists of the same elements as a prima facie case of retaliation, except that a plaintiff may demonstrate that "he was subjected to severe or pervasive retaliatory

---

[6] Although Title VII does not allow liability to attach to individuals for retaliatory conduct, the KCRA does allow for individual liability for retaliation.  *Frentz v. City of Elizabethtown*, Civ. A. No. 08-621-JBC, 2010 WL 4638768, at *4 (W.D. Ky. Nov. 4, 2010) (citing *Morris*, 201 F.3d at 794).

harassment by a supervisor" in lieu of proving adverse employment action. *Morris v. Oldham Cty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000) (holding that retaliatory harassment by a supervisor is actionable under Title VII); *Diamond v. United States Postal Serv.*, 29 F. App'x 207, 213 (6th Cir. 2002). However, such harassment must "constitute[] more than simple teasing, offhand comments, and isolated incidents." *Id.*

Walter alleges that Hamilton made disparaging comments about his disability on three occasions in a nine-day period. However, Walter has not included any facts to suggest that Hamilton's comments rose to the level of severe and pervasive harassment. In fact, Hamilton's behavior seems more akin to the offhand comments and isolated incidents that are insufficient to constitute retaliatory harassment. Because Walter's proposed amendments to his retaliation claim against Hamilton fail to state a claim upon which relief may be granted, this aspect of his request for leave to amend must be denied as futile.

### 3.    Discrimination in Violation of the ADA

The ADA prevents employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

19

Before bringing a claim for disability discrimination, a plaintiff must exhaust his or her administrative remedies by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000).

Defendants argue that Walter should not be permitted to amend his Complaint to include a claim for disability discrimination in violation of the ADA because such an exercise is futile.  In support of this proposition, Defendants point to the lack of evidence that he filed a charge of discrimination with the EEOC. Walter does not contest this argument.  Because he has not exhausted his administrative remedies, his proposed amended claim would not be able to withstand a Motion to Dismiss.  His request for leave to amend will therefore be denied as futile.

### 4.    Constructive Discharge

As the Court explained *supra*, "Kentucky law does not recognize independent claims of … constructive discharge—they are actionable only through the KCRA."  *Suchanek v. Univ. of Ky.*, Civ. A. No. 3:10-19-DCR, 2011 WL 3045986, at *9 (E.D. Ky. July 25, 2011); *see also Sullivan*, 2013 WL 2286069, at *3.  Thus, to the extent that Walter seeks to amend his Complaint to state a stand-alone claim for constructive discharge, his request must be denied as futile.

20

5.    **Retaliation in Violation of the FMLA**

"The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor Co.,* 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)).   To state a prima facie case of retaliation under the FMLA, a plaintiff must satisfy the following elements: (1) he availed himself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between the exercise of rights and the adverse employment action.   *Edgar v. JAC Prods, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006).

Defendants argue that Walter's efforts to state a claim for FMLA retaliation against Guitar Center are futile because he is once again unable to satisfy the third element of a prima facie case.   Walter alleges that he suffered adverse employment action when he was placed on a performance improvement plan shortly after returning from FMLA leave. [DE 9-1, p. 7-8, ¶ 43]. He also claims that his constructive discharge amounted to an adverse employment action.   While Defendants are correct in asserting that placement on a performance improvement plan does not constitute adverse employment action for purposes of an FMLA retaliation claim,

21

constructive discharge may suffice to satisfy that element. *Novotny v. Reed Elsevier*, 291 F. App'x 698, 703 (6th Cir. 2008); *Festerman v. Cty. of Wayne*, 611 F. App'x 310, 322 (6th Cir. 2015). Thus, Walter has alleged sufficient facts to state a claim for FMLA retaliation against Guitar Center. Walter will be permitted to amend his Complaint to include such a claim.

As a final matter, the Court notes that Walter has merely submitted the proposed additions to his Complaint, rather than a full Amended Complaint. Because the Court has given him leave to amend certain aspects of his Complaint, Walter must submit a full Amended Complaint consistent with the terms of this Memorandum Opinion and Order.[7]

## IV.  CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Defendants Guitar Center Stores, Inc. and Kirk Hamilton's Motion for Partial Dismissal [DE 6] be, and is, hereby **GRANTED** as to Count I (KCRA discrimination) against Defendant Hamilton, Counts III (outrage) and IV (negligent hiring and

---

[7]Walter also suggests that Defendants' Motion to Dismiss should be denied as moot, in light of his Motion for Leave to Amend. [DE 11 at 7-8]. This assertion is incorrect, as some of his claims are subject to dismissal in spite of his Motion.

retention) against both Defendants, and the portion of Count II (KCRA retaliation) that purports to state a conspiracy claim against both Defendants;

(2)   Plaintiff Walter's Motion for Leave to Amend [DE 9] be, and is, hereby **GRANTED** as to Count II (direct claims for KCRA retaliation) against each Defendant, as well as proposed Count VI (FMLA retaliation), and **DENIED** as to proposed Count IV (ADA disability discrimination) and Count V (constructive discharge);

(3)   Plaintiff Walter shall **FILE** a full Amended Complaint consistent with this Court's Memorandum Opinion and Order **within fourteen (14) days** of the date of entry of this Order; and

(4)   Pursuant to Fed. R. Civ. P. 16 and 26,

(a)   within twenty-one (21) days from the date of service of this Order, the parties, by counsel, shall meet, either in person or by telephone, to discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the case, to make or arrange for the disclosures required by Fed. R. Civ. P. 26(a)(1), as amended December 1, 2010, and to develop a proposed discovery plan. *See* Fed. R. Civ. P. 26(f), as amended December 1, 2006.

(b)   within ten (10) days after the meeting the parties shall file a joint status report containing:

(i) the discovery plan; in formulating their plan, the parties should consider the Court's belief that discovery should last between three and five months.

(ii) the parties' estimate of the time necessary to file pretrial motions;

(iii) the parties' estimate as to the probable length of trial;

(iv) the dates mutually convenient for trial;

(v) the parties' decision as to whether the action may be referred to a United States magistrate judge for trial pursuant to 28 U.S.C. § 636(c); and

(vi) the parties' determination as to whether the resolution of the case may be aided by mediation or other special procedures as authorized by statute or local rule.

Counsel may utilize Form 52, Fed. R. Civ. P.(App.) as the form of the joint status report. Each party is directed to advise the Court at the time of the submission of the joint report of all parent corporations, subsidiaries, affiliates, members and/or partners with which it is associated.

This the 31st day of July, 2017.

24



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge